IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:14-CR-97-1H

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | |
| ) | **MEMORANDUM AND** |
| ) | **RECOMMENDATION** |
| SHAWNEE OTTO JENNINGS ) | |
| a/k/a FRANK WHITE, ) | |
| Defendant. ) | |

This matter is before the court on Defendant's motion to suppress [DE #30], which has been referred to the undersigned for memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). The Government filed a response in opposition to the motion to suppress. To further develop the record, the undersigned conducted an evidentiary hearing on July 14, 2015, at which the Government and Defendant, with counsel, appeared. Accordingly, the matter is now ripe for decision.

## STATEMENT OF THE CASE

On October 22, 2014, a federal grand jury returned an indictment charging Shawnee Otto Jennings ("Jennings") with possession with intent to distribute a quantity of heroin, a quantity of cocaine base (crack) and a quantity of marijuana in violation of 21 U.S.C. § 841(a)(1) (Indictment [DE #1] at 1.)

On May 22, 2015, Defendant filed the instant motion to suppress all evidence against him. Defendant contends that the evidence was obtained as a result of an unlawful and

unconstitutional stop of an automobile in which he was a passenger. The Government argues that the vehicular stop was lawful because the officers conducting the stop had probable cause to believe that a traffic violation had occurred and, furthermore, the officers had reasonable suspicion to believe that Defendant was actively engaged in criminal activity at the time of the stop.

## STATEMENT OF THE FACTS

At the evidentiary hearing on Defendant's motion, the court heard the testimony of Michelle Goessens, an Officer with the Wilmington Police Department and a member of the FBI Safe Streets Task Force ("Task Force"), and Detective Joshua Cortes, a gang task force officer with the New Hanover County Sheriff's Office. Based upon their testimony and the exhibits admitted into evidence, the undersigned makes the following findings of fact.

Jennings came to the Task Force's attention in November 2011 when a cooperating defendant described Jennings, who was soon to be released from prison, as "one of the most dangerous guys in Wilmington." The informant subsequently advised officers that Jennings and another individual were in charge of the Henchmen Blood Gang, a subset of the Double II set of the Bloods street gang. In September 2013, a cooperating source advised that Jennings and Victor Valladares as were extorting money from local gambling houses and high level drug dealers, threatening that they would "be dealt with" if they did not pay. Another confidential source similarly advised that Jennings and Victor Valladares were extorting local businesses and drug dealers, demanding between fifteen to twenty percent of their proceeds. On September 10, 2013, a cooperating defendant advised that Jennings was the leader of the Henchmen, that he had seen Jennings and some younger associates with guns, and that Jennings had placed armed individuals around his house. The cooperating source also stated that Jennings had recently

2

purchased $7,000 in cocaine and that Jennings and Valladares were extorting local businesses and drug gang leaders. One of the confidential sources further advised that on September 15, 2013, Jennings was at a park in Wilmington collecting "taxes" from local drug dealers and that he had armed Blood gang members with him to ensure that the "taxes" were paid.

On September 20, 2013, Task Force officers conducted a surveillance of Jennings' house from 10:07 a.m. until approximately 11:00 a.m. Officers observed a number of vehicles pulling up to Jennings' residence and staying for a short period of time. Jennings was at the residence and was seen interacting with individuals in the vehicles and counting money. At approximately 11:00 a.m., Jennings left the residence in a dark colored Honda Accord driven by Altrimese Davis. Based on Jennings' behavior, officers formed the opinion that Jennings was engaging in the sale of drugs from the residence and decided to stop the vehicle. To protect the integrity of the investigation, the officers requested the assistance of New Hanover County Sheriff's Office Detectives Cortes and Taylor in conducting a traffic stop of the vehicle. Detectives Cortes and Taylor were asked to track the vehicle and to stop it if any traffic violations were observed.

Detectives Cortes and Taylor located the vehicle two or three blocks after it left Jennings' residence traveling toward Market Street. The detectives were in an unmarked police vehicle immediately behind the Honda as it made a right turn onto Market Street. The passenger side windows were down and they observed that the passenger (Jennings) was not wearing a seat belt. The detectives continued following the vehicle and confirmed that Jennings was not wearing a seat belt. As the Honda turned into a parking lot, the detectives initiated a stop of the vehicle by activating the police vehicle's lights. Detective Cortes approached the passenger side of the vehicle, and Detective Taylor approached the driver's side of the vehicle. Jennings was on the phone either texting or calling someone. Detective Cortes detected a strong odor of marijuana

3

and instructed Jennings to get out of the car. Jennings had a brown paper bag with a black object in it. He put it down and exited the vehicle. Detective Cortes asked Jennings to turn around and placed him in handcuffs due to the smell of marijuana. While conducting a pat-down search for contraband or weapons, Detective Cortes felt a bulge in Jennings' waistband, which he believed to be contraband. He lifted Jennings' shirt, revealing a black purse around Jennings' waist, which was unzipped. In plain view were clear plastic baggies and wax baggies, consistent with cocaine and heroin. Jennings also had money in his waistband. No traffic citations were issued as a result of the stop.

## DISCUSSION

The Fourth Amendment guarantees the right of the people to be secure against unreasonable searches and seizures "of their persons, houses, papers, and effects." U.S. Const. amend. IV. "Temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons' within the meaning of this provision." *Whren v. United States*, 517 U.S. 806, 809-10 (1996). Generally, an automobile stop is reasonable if supported by probable cause to believe a traffic violation has been committed, *id.* at 810, or by reasonable suspicion that criminal activity may be afoot, *United States v. Arvizu*, 534 U.S. 266, 273 (2002). An officer may further detain the vehicle's occupants for investigative purposes. *Whren*, 517 U.S. at 810. This is true even where the traffic stop is pretextual. *Id.* at 811-13. An officer's subjective intentions or ulterior motives are irrelevant to the Fourth Amendment issue. *Id.*; *United States v. Hammond*, 353 Fed. App'x 877, 879 (4th Cir. 2009) (determining that an officer's motive is irrelevant to a Fourth Amendment claim but may be relevant to an equal protection claim). As long as there was an

4

objectively valid basis for the traffic stop, evidence seized as a result of the stop will not be suppressed on the ground the initial stop was unreasonable.

The evidence presented at the hearing in this case establishes that the officers' stop of the vehicle in which Jennings was a passenger was supported both by probable cause to believe a traffic violation had occurred and by reasonable suspicion to believe Jennings was engaged in criminal activity at the time of the stop. Detective Cortes testified that as the Honda Accord turned right onto Market Street, the passenger windows were down and that he observed Jennings was not wearing a seat belt. As such, the officers had probable cause to stop the vehicle for violation of North Carolina's motor vehicle laws and to temporarily detain its occupants. The officers' failure to issue a traffic citation does not invalidate the otherwise lawful stop. Moreover, the evidence presented demonstrates that in the days leading up to the traffic stop, the Task Force had received credible information that Jennings was engaged in violent crime, extortion and drug activity. The morning of the traffic stop, Task Force officers conducted a surveillance of Jennings' home. Jennings was seen engaging in a pattern of behavior consistent with drug activity. When Jennings entered the Honda Accord driven by Altrimese Davis, officers had articulable, reasonable suspicion to believe Jennings was engaged in drug activity or extortion. Because the officers had an objectively reasonable basis for stopping the vehicle and Jennings does not challenge the scope or duration of the stop, Defendant's motion to suppress should be denied.

## **CONCLUSION**

For the foregoing reasons, the undersigned RECOMMENDS that Defendant's Motion to Suppress [DE #30] be DENIED.

5

Case 7:14-cr-00097-H   Document 61   Filed 01/08/16   Page 5 of 6

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until **January 25, 2016,** to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his or her own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.,* 28 U.S.C. § 636(b)(l); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C. A party that does not file written objections to the Memorandum and Recommendation by the foregoing deadline, will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, a party's failure to file written objections by the foregoing deadline may bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation. *See Wright v. Collins*, 766 F.2d 841, 846-47 (4th Cir. 1985).

This 7th day of January 2016.

*/s/ Kimberly A. Swank*
KIMBERLY A. SWANK
United States Magistrate Judge